UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CHARLES PEACH, ET AL.                                           Plaintiffs

v.                                          Civil Action No. 4:22-cv-000133-RGJ

AIYANNA HAGERMAN, ET AL.                                       Defendants

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants' Motion to Dismiss [DE 7] and Plaintiffs'
Motion to Stay [DE 10].  Fully briefed, this matter is ripe for decision.  For the reasons set forth
below, Defendants' Motion to Dismiss will be **GRANTED in part** and **DENIED in part**.
Plaintiffs' motion is **DENIED**.

## I.        BACKGROUND

These facts are set out in the complaint and accepted as true for purposes of this Motion to
Dismiss.  *See Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).  This case relates to
dependency, neglect, and abuse proceedings concerning the minor L.A.P.  Having won that case,
the child's father Charles Peach, both individually and as Next Friend of L.A.P., as well as the
child's stepmother Heather Peach filed this action against Aiyanna Hagerman and Vanessa Morris,
employees of Kentucky's Cabinet for Health and Family Services ("CHFS").

On September 23, 2021, Charles Peach spanked L.A.P.  [DE 1 at ¶25].  The following day,
September 24, 2021, Heather Peach took L.A.P. to daycare.  [*Id.* at ¶37].  Ms. Peach told Cherish
Baldwin, a daycare worker, about the spanking L.A.P. received the night before.  [*Id.* at ¶38].
Baldwin made a report to CHFS about marks she observed on the child.  [*Id.* at ¶41].  Defendant
Hagerman was one of two social workers who responded to the report.  [*Id.* at ¶42].  The social

workers initiated an investigation that same day.  [*Id.* at ¶43, ¶51].  CHFS contacted Charles Peach and Heather Peach to interview them.  [*Id.* at ¶47].  At the interview with Defendants and a Hopkins County Sheriff's Deputy, Charles Peach requested an attorney pursuant to his Sixth Amendment rights.  [*Id.* at ¶48, ¶50].  Defendant Morris advised Mr. Peach that CHFS was filing a petition in Hopkins County Family Court and that L.A.P. was to remain in the care of ShayLee McDonald, the child's biological mother.  [*Id.* at ¶51].  Defendant Hagerman contacted ShayLee McDonald and asked her and L.A.P. to come to the CHFS office.  [*Id.* at ¶56].  Defendant Morris and Ms. McDonald spoke at the office and Defendant Morris requested that L.A.P. be taken to the emergency room for a full body skeletal examination.  [*Id.* at ¶57].

Defendant Hagerman then created a safety plan which stated that ShayLee McDonald, the child's mother, would take the child for the skeletal examination, that she would refrain from using physical discipline, and that L.A.P. would remain in her care during the pendency of the investigation.  [*Id.* at ¶58].  The plan also required that Charles Peach's contact with L.A.P. be supervised.  [*Id.*].  Ms. McDonald signed and agreed to this safety plan.  [*Id.* at ¶59].  This all occurred on September 24, 2021.

Defendant Hagerman filed a petition in Hopkins Family Court on October 8, 2021, naming both Charles Peach and Heather Peach as responsible for the child's abuse or neglect.  [*Id.* at ¶62].  No criminal charges were ever filed against Charles or Heather Peach.  [*Id.* at ¶63].  A temporary removal hearing was held on October 19, 2021, where the court ordered a change of temporary residence of the child.  [*Id.* at ¶¶64–65].  The child was placed with his mother.  [*Id.* at ¶65].  Plaintiffs allege that from September 24, 2021, through February 22, 2022, Charles and Heather Peach were separated from L.A.P. either in full or were only allowed to visit the child for one to ten hours per week.  [*Id.* at ¶66].

On December 8, 2021, a prevention plan was created for Heather Peach and a case plan was created for Charles Peach. [*Id.* at ¶68]. Plaintiffs allege that Heather felt she had no choice but to agree to the prevention plan. [*Id.* at ¶69]. The plan required her to take parenting classes and included other restrictions in her interactions with L.A.P. [*Id.*]. Charles Peach refused to agree to the case plan that was presented to him. [*Id.* at ¶70]. Charles Peach's adjudication hearing was set for January 11, 2022. [*Id.* at ¶71]. The final hearing occurred on February 8, 2022. [*Id.* at ¶72]. Plaintiffs allege at this hearing that Defendant Hagerman testified that she filed the petition because (i) "no one was willing to speak about it," (ii) "there was no explanation of the injuries," and (iii) "Charles Peach's request for an attorney was concerning." [*Id.* at ¶73]. Thus, Plaintiffs allege Defendants acted in bad faith. [*Id.* at ¶74].

On April 15, 2022, the presiding judge entered an order finding that by a preponderance of the evidence, CHFS did not meet its burden to establish that Plaintiff Charles Peach had been dependent, neglectful, and/or abusive towards L.A.P. and terminated the case in Charles Peach's favor. [*Id.* at ¶78]. As a result, Plaintiffs assert claims pursuant to 42 U.S.C. § 1983 for alleged deprivations of their Fourth Amendment and Fourteenth Amendment rights as well as state law claims for malicious prosecution and the tort of outrage. Plaintiffs also seek punitive damages.

## II.     MOTION TO DISMISS STANDARD

### A.  Standard

Federal Rule of Civil Procedure 12(b)(6) instructs that a court must dismiss a complaint if the complaint "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To properly state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all

reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted). "But the district court need not accept a bare assertion of legal conclusions." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citation omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "A complaint will be dismissed . . . if no law supports the claim made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561–64).

If "matters outside the pleadings are presented to and not excluded by the court" when ruling upon a motion under Rule 12(b)(6), the Federal Rules require that "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). This Rule does not require the Court to convert a motion to dismiss into a motion for summary judgment every time the Court reviews documents that are not attached to the complaint. *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999). "[W]hen a document is referred to in the complaint and is central to the plaintiff's claim … [,] the defendant may submit an authentic copy [of the document]

to the court to be considered on a motion to dismiss, and the court's consideration of the document does not require conversion of the motion to one for summary judgment." *Id.* (quotation omitted).

### B. Consideration of Matters Outside the Pleadings

The Court must determine, as outlined above, whether to construe the Motion by Defendants as one to dismiss or one for summary judgment. Defendants submitted several exhibits to support its Motion to Dismiss. Plaintiffs posit that Defendants' Motion to Dismiss [DE 7] must be treated as one for summary judgment because Defendants rely on exhibits outside of the pleadings. [DE 10 at 1; DE 11 at 2]. Plaintiffs thus contend they should be allowed to conduct necessary discovery pursuant to the rules. [DE 10 at 1–2]. Plaintiffs identify the following exhibits or statements as ones presented outside the pleadings: (1) Peach-Phillips divorce proceedings [DE 7-1 at 4–10], (2) the temporary removal hearing and the petition related to the dependency, neglect, and abuse proceedings [DE 7-1 at 1–3, 11–16], (3) representation by defense counsel that the daycare worker informed them that the child did not want to sit on the toilet due to injury [DE 7 at 7, n.1], (4) statement by defense counsel that biological mother's parenting time had begun on September 24 when the child left daycare per agreement between the parents [*Id.* at 10, 15]; (5) statement by defense counsel that Charles Peach did not want to speak to CHFS [*Id.* at 12 n. 6]; and (6) representation by defense counsel that the "marks" on the child were bruises. [*Id.* at 7, 12; DE 7-1 at 15].

The Court declines to convert the motion to dismiss to a motion for summary judgment. A court may consider public records without converting a Rule 12(b)(6) motion into a Rule 56 motion. *See Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008). When reviewing a motion to dismiss, the Court "may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's

motion to dismiss so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008). Moreover, the Court must accept the complaint's well-pleaded factual allegations as true, construe the complaint in the light most favorable to the plaintiffs, and draw all reasonable inferences in the plaintiffs' favor. *Id.*

In *J.A.L. v. Howard*, the defendant social worker provided several public records from the removal proceedings to the court and the court considered those records without converting the motions to dismiss to motions for summary judgment. No. CV 5:22-130-DCR, 2022 WL 5016788, at *4 (E.D. Ky. Oct. 4, 2022). These included: the petitions that initiated the removal proceedings, a safety plan, temporary removal and temporary custody orders, and a court order returning the children to their parents. *Id.*; *see also Gaines v. Hagerty*, 3:21-CV-758-CRS, 2022 WL 1571770, at *1 (W.D. Ky. May 17, 2022) (taking judicial notice of documents filed in a juvenile court case). Plaintiffs concede that the divorce proceeding between Charles Peach and ShayLee McDonald is a matter of public record. [DE 16 at 2]. Additionally, Plaintiffs offer no caselaw suggesting that judicial notice of documents filed in a neglect or abuse case is inappropriate.

Therefore, the Court will consider the divorce proceeding and the temporary removal hearing as well as the petition related to the dependency, neglect, and abuse case because these are public records and caselaw supports allowing the court to consider them. However, the Court will not consider the statements or representations made by defense counsel not identified in the records cited for purposes of this motion to dismiss.

### III.    DISCUSSION

To state a claim under 42 U.S.C. § 1983, "a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of

the United States (2) caused by a person acting under the color of state law.*" Doe v. Miami Univ.*, 882 F.3d 579, 595 (6th Cir. 2018).  Even if a plaintiff sufficiently pleads a § 1983 claim against a government official in their personal capacity, if raised, there is an additional hurdle a plaintiff must overcome—qualified immunity.  *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009).  Additionally, Defendants assert absolute immunity for certain conduct. Though the Court does not consider the absolute immunity issue dispositive of any of the claims, Defendants' reliance on it warrants discussion.  The Court begins with an overview of absolute immunity, proceeds to consider the claims under a qualified immunity analysis, and then addresses Plaintiffs' remaining claims.

## A. Absolute Immunity

Defendants first contend that Plaintiffs' claims are barred by absolute immunity.  [DE 7 at 3].  Indeed, social workers do enjoy a form of absolute immunity, though the immunity applies only in certain contexts.  "[S]ocial workers are absolutely immune only when they are acting in their capacity as *legal advocates*—initiating court actions or testifying under oath—not when they are performing administrative, investigative, or other functions."  *Holloway v. Brush*, 220 F.3d 767, 775 (6th Cir. 2000) (en banc) (emphasis in original).  "The official seeking absolute immunity bears the burden of showing that immunity is justified in light of the function she was performing." *Id.* at 774.  "When applied, [t]he defense of absolute immunity provides a shield from liability for acts performed erroneously, even if alleged to have been done maliciously or corruptly."  *Kovacic v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 724 F.3d 687, 694 (6th Cir. 2013) (alteration in original) (internal quotation marks omitted).

As explained by the Sixth Circuit in *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, absolute immunity based on a prosecutorial function covers social workers' interactions

with a court, such as "testimony or recommendations given in court concerning the child's best interests as she saw the matter."  640 F.3d 716, 725 (6th Cir. 2011) (internal quotation marks omitted).  "Social workers, like prosecutors and probation officers, enjoy absolute immunity when they engage in conduct 'intimately associated with the judicial process.'"  *Cunningham v. Dep't of Children's Servs.*, 842 F. App'x 959, 967 (6th Cir. 2021) (quoting *Pittman*, 640 F.3d at 725)).  "[S]ocial workers who initiate judicial proceedings against those suspected of child abuse or neglect perform a prosecutorial duty, and so are entitled to absolute immunity."  *Rippy v. Hattaway*, 270 F.3d 416, 421 (6th Cir. 2001) (alteration in original).  Also, "the submission of an affidavit that triggers judicial child-removal proceedings is in fact an act of legal advocacy by social workers."  *Bauch v. Richland Cnty.*, 733 F. App'x 292, 296 (6th Cir. 2018) (citing *Barber v. Miller*, 809 F.3d 840, 843 (6th Cir. 2015)).

This being the case, some of Defendants' actions are shielded by absolute immunity.  Filing the petition on October 8, 2021, which named both Charles Peach and Heather Peach as responsible for the child's abuse or neglect [DE 1 at ¶62] is "clearly prosecutorial in nature under this standard and thus protected by absolute immunity."  *Kovacic*, 724 F.3d at 694.  Therefore, Defendant Hagerman is protected for this conduct.  Defendant Morris's approval of the filing of the petition is also protected by absolute immunity.  [DE 1 at ¶53].  Similarly, any advocacy actions related to the temporary removal hearing held on October 19, 2021, was prosecutorial in nature and is thus protected by absolute immunity.  *Id.*  Finally, any testimony by Defendants under oath such as Hagerman's testimony at the final hearing on February 8, 2022, is also protected by the shield of absolute immunity.  In summary, the allegations made against Hagerman and Morris that relate to their roles as advocates in the dependency, neglect, and abuse proceedings are barred by absolute immunity.

Despite Defendants' arguments to the contrary, Plaintiffs do challenge investigative actions of both Hagerman and Morris.  Significantly, Plaintiffs allege that Hagerman and Morris pursued an investigation against him despite a lack of credible evidence.  Plaintiffs assert that the marks on the child did not meet CHFS's own acceptance criteria for a report of suspected child abuse or neglect [DE 1 at ¶45], and despite this failure, Hagerman and Morris accepted the referral and pursued further investigation.  [*Id.* at ¶46].

Additionally, Plaintiffs claim that without a court order, Defendants instructed that the child would remain in the sole care of the biological mother and severely restricted Plaintiffs' visitation.  [*Id.* at ¶¶51, 58].  "Because a social worker's decision to open or conduct an investigation is not protected by absolute immunity, [Plaintiffs] can challenge [Defendants'] decision to investigate him."  *Nettles v. Bruno*, No. 1:22-CV-10535, 2022 WL 2405217, at *4 (E.D. Mich. Apr. 1, 2022), report and recommendation adopted, No. 1:22-CV-10535, 2022 WL 3050628 (E.D. Mich. Aug. 2, 2022) (citing *Achterhoff v. Selvaggio*, 886 F.2d 826, 830 (6th Cir. 1989)); *see also Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 421 (6th Cir. 2001) ("The investigation of a social worker that precedes the filing of a complaint or petition is not necessarily a judicial act covered by absolute immunity."); *see also J.A.L.*, 2022 WL 5016788, at *5.

With respect to Defendants' actions regarding the safety plan, Defendants' claim for absolute immunity fails as well.  Defendant Hagerman created a safety plan stating that ShayLee McDonald, the child's mother, would take the child for the skeletal examination.  [DE 1 at ¶58].  The plan required McDonald to refrain from using physical discipline, stated that the child would remain in her care, and further required that Charles Peach's contact with the child be supervised. [*Id.*].  The safety plan was wholly unrelated to Hagerman's conduct as an advocate before Hopkins Family Court.  The safety plan was a private agreement between CHFS and ShayLee McDonald

that was entered prior to, and enforced separately from, the dependency, neglect, and abuse proceedings. [*Id.* at ¶59, ¶61].

Regarding the prevention plan that Heather Peach agreed to [*Id.* at ¶69], the Court finds that Defendants are not absolutely immune for this action. This plan was also wholly unrelated to Defendants' conduct as an advocate. The Court holds that Defendants are absolutely immune for actions in their capacity as legal advocates—initiating court actions or testifying under oath. *See Holloway*, 220 F.3d at 775. But any actions unrelated to their roles as legal advocates, Defendants are not protected by absolute immunity.

### B. Supervisory Liability

Before turning to the merits of the qualified immunity defense, it is worth addressing Defendant Morris's argument that as a supervisor she cannot be held liable under § 1983 on the theory of respondeat superior. [DE 7 at 7]. "[A] § 1983 plaintiff need only show that a supervisory official implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Holliday v. Leigh*, No. 2:17-cv-133 (WOB-CJS), 2020 WL 3217666, at *5 (E.D. Ky. June 15, 2020). Plaintiffs allege that Defendant Morris "appears to have approved of, signed off on, or have overseen the majority of work done by Hagerman, having signed many of the documents and findings drafted by Hagerman." [DE 1 at ¶53]. Additionally, Morris worked on the case while Hagerman was on leave. [DE 7 at 4]. Thus, Morris authorized or knowingly acquiesced to the alleged deprivation of Plaintiffs constitutional rights. Morris's conduct is therefore sufficient for purposes of liability under § 1983.

### C. Qualified Immunity

Defendants contend that they are entitled to the protections of qualified immunity regarding all counts. [DE 7 at 6]. Plaintiffs contend that their Fourth and Fourteenth Amendment claims are

premised on the fact that the Defendant social workers took L.A.P. from Plaintiffs without a court order on September 24, 2021, when they "seized" the child from Charles and Heather Peach and placed the child with ShayLee McDonald, the child's biological mother.

When a defendant invokes qualified immunity, it is the plaintiff's burden to show: (1) the defendant's acts violated a constitutional right and (2) the right was clearly established at the time of the defendant's alleged misconduct. *Barber v. Miller*, 809 F.3d 840, 844 (6th Cir. 2015). For a right to be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 845 (quoting *Leonard v. Robinson*, 477 F.3d 347, 355 (6th Cir. 2007)). When determining whether a right is clearly established, courts are instructed to consider the "specific context of the case" and to avoid construing rights too generally. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Hagans v. Franklin Cnty. Sherriff's Office*, 695 F.3d 505, 508 (6th Cir. 2012). Once the right is properly defined, the Court determines whether a right is clearly established by examining cases from the Supreme Court, the Sixth Circuit, and other circuits. *Barber*, 809 F.3d at 845 (quoting *Andrews v. Hickman Cnty.*, 700 F.3d 845, 853 (6th Cir. 2012)). Additionally, the Sixth Circuit has noted that "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity," because even though "an officer's [or social worker's] 'entitlement to qualified immunity is a threshold question to be resolved at the earliest possible point,'" this is typically done at the summary judgment phrase "and not [by] dismissal under Rule 12." *Wesley v. Campbell*, 779 F.3d 421, 433–34 (6th Cir. 2015) (quoting *Vakilian v. Shaw*, 335 F.3d 509, 516 (6th Cir. 2003)).

### 1.  Plaintiffs' Fourth Amendment Claim

"The Fourth Amendment is implicated when an individual's freedom to leave is restricted." *Thacker v. City of Columbus*, 328 F.3d 244, 257 (6th Cir. 2003).  A plaintiff "is required to show not only that there was a seizure, but also that it was unreasonable under the Fourth Amendment." *Id.*  The Sixth Circuit has held that social workers are governed by the Fourth Amendment's warrant requirement when entering a home in a child services capacity.  *Andrews v. Hickman Cnty., Tenn.*, 700 F.3d 845, 859-60 (6th Cir. 2012).  The Sixth Circuit has also held that, "at a minimum, social workers investigating child abuse must have some definite and articulable evidence giving rise to a reasonable suspicion that a child has been abused or is in imminent danger of abuse before seizing a child from his or her school classroom without a warrant. . . ." *Schulkers v. Kammer*, 955 F.3d 520, 534 (6th Cir. 2020) (internal quotation marks omitted).

Defendants argue that because they did not physically enter Plaintiffs' home and remove L.A.P., they cannot be liable for "seizing" L.A.P. under the Fourth Amendment.  [DE 7 at 16]. Caselaw suggests otherwise.  *See Kirkpatrick v. Cnty. of Washoe*, 843 F.3d 784, 792 (9th Cir. 2016) (social workers violated child's Fourth Amendment rights by removing her from her mother under non-exigent circumstances); *Barnett v. Smithwick*, No. 3:17-CV-155, 2019 WL 7290475, at *9 (E.D. Tenn. May 30, 2019), *aff'd*, 835 F. App'x 31 (6th Cir. 2020) (removing a child from a parent's custody is a "seizure" of their person within the meaning of the Fourth Amendment).

For example, in *Bambach v. Lapeer Cnty.*, plaintiffs asserted a Fourth Amendment claim premised on the fact that the social workers took the children from the father's custody without a court order when they "seized" the children from him (the custodial parent) and placed the children with the mother (the non-custodial parent).  *Bambach v. Lapeer Cnty.*, No. 18-14039, 2020 WL 2812758, at *8 (E.D. Mich. May 29, 2020).  In *Bambach*, at the time of the "seizure," the children

were with the biological mother.  And based on the sexual allegations made against the father, the social worker contacted the father and informed him that "the girls are not returning home until CPS can investigate." *Id.* at *1.  The social worker did not go into the home or school to "remove" the children, but instead informed the father that he could not have custody of his children until CPS investigated.  *Id.* at *3.

The plaintiffs in *Bambach* relied on *Davis v. Kendrick*, No. 14-12664, 2015 WL 6470877 (E.D. Mich. Oct. 27, 2015), and *Farley v. Farley*, 225 F.3d 658, 2000 WL 1033045 (6th Cir. 2000). "The *Davis* court denied summary judgment to a social worker defendant where the custodial mother never consented to a safety plan." *Id.* at *4 (citing Davis, 2015 WL 6470877, at *8)).  And the *Farley* court "denied summary judgment because the plaintiff's consent to the placement of the children with their father 'was not voluntary during the entire time period involved.'" *Id.* (citing *Farley*, 2000 WL 1033045, at *7)).  In examining the motion to dismiss, the *Bambach* court held that "[p]laintiffs allegations regarding the conduct of [the social workers] are sufficient to establish that they undertook a warrantless removal of the [c]hildren from [the father's] home, without notice and a full opportunity for a hearing to present witnesses and evidence." *Id.* at *9. ("The Sixth Circuit has recognized that the Fourth Amendment applies to social workers, such that they are not entitled to qualified immunity if they effectuate a warrantless removal of children from their homes ….").  Thus, based on court precedent, the district court recognized that the "seizure" of the children under similar circumstances as alleged by Plaintiffs in the present case rises to the level of a warrantless removal of the child from the father's home.  *Id.*

Here, Plaintiffs allege their Fourth Amendment rights were violated when "Defendants interfered with L.A.P.'s rights to not be seized or interfered with, and/or being deprived contact from his father Charles Peach, and to not be interviewed and seized when there is no evidence of

dependency, neglect, and/or abuse." [DE 1 at ¶97]. Charles Peach shared joint custody of L.A.P. with ShayLee McDonald. [DE 11-1 at 6]. As in *Bambach*, Plaintiffs claim that they were told by CHFS on September 24, 2021, that L.A.P. was to remain in the care of McDonald and it was not until October 19, 2021, that the Family Court ordered the temporary placement of L.A.P. [DE 1 at ¶¶64–65]. Plaintiffs further contend that "Defendants pursued the dependency, neglect and abuse claims against Plaintiffs with complete absence of abuse or so little evidence that it would not even provide probable cause to support the claims." [DE 1 at ¶76]. They also allege that at this point, the marks on L.A.P. did not meet CHFS's own acceptance criteria for a report of suspected child abuse or neglect. [*Id.* at ¶45]. As such, these allegations are sufficient to support a claim that L.A.P.'s Fourth Amendment rights were abridged.

Therefore, at this stage of litigation and accepting Plaintiffs' facts as true, the Court declines to grant Defendants' Motion to Dismiss Plaintiffs' Fourth Amendment seizure claim based on qualified immunity.

### 2. Plaintiffs' Fourth Amendment Malicious Prosecution Under § 1983

For Plaintiffs to succeed on a Fourth Amendment malicious prosecution claim, they must prove that: (1) a criminal prosecution was initiated against them and that the Defendants made, influenced, or participated in the decision to prosecute; (2) that there was a lack of probable case for the criminal prosecution; (3) that the Plaintiffs suffered a deprivation of liberty apart from the initial seizure; and (4) the criminal proceeding was resolved in Plaintiffs favor. *Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010).

Defendants argue that Plaintiffs fail to meet the first element of a claim for malicious prosecution. [DE 7 at 6]. Plaintiffs contend that "[w]hile this matter was in Family Court, a finding of abuse has criminal overtones . . . ." [DE 11 at 20]. The Court acknowledges that dependency,

neglect, and abuse proceedings have criminal overtones, but does not find they are criminal prosecutions. *See Turner v. Lowen*, No. 3:18-cv-00721, 2019 WL 4820519, at *12 (M.D. Tenn. Oct. 1, 2019). Consequently, Plaintiffs have not met the first element and have not pled facts that demonstrate malicious prosecution cognizable under § 1983 as a Fourth Amendment violation. Thus, dismissal of the Plaintiff's malicious prosecution claim is appropriate on qualified immunity grounds because the Plaintiffs have not shown that it was clearly established that such a violation could occur where the underlying state court proceeding did not involve a criminal prosecution. For the reasons set forth above, the Court **grants** Defendants' Motion to Dismiss Plaintiffs' Fourth Amendment malicious prosecution claim.

### 3. Plaintiffs' Fourteenth Amendment Claims

Plaintiffs contend that Defendants violated their rights to both procedural and substantive due process under the Fourteenth Amendment by "imposing restrictions on Plaintiffs visitation, interfering with their custodial rights, limiting contact with one another, violating Plaintiffs privacy, forcing Heather Peach to enter into a parenting plan, refusing to issue an unsubstantiated abuse report which resulted in disrupting the family integrity, all without due process of law." [DE 1 at ¶98, ¶101].

The Due Process Clause of the Fourteenth Amendment says that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const., amend. XIV, §1. "This clause ensures fair process and safeguards a substantive sphere as well, barring certain government actions regardless of the fairness of the procedures used to implement them." *Schulkers*, 955 F.3d at 539 (cleaned up) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998)). The Sixth Circuit has held that "'[i]t is clearly established that the Constitution recognizes both a protectible procedural due process interest in parenting a child and a substantive

fundamental right to raise one's child.'" *Id.* (quoting *Bartell v. Lohiser*, 215 F.3d 550, 557 (6th Cir. 2000)).

Plaintiffs argue that Defendants unconstitutionally exceeded their powers in both ways in the present case. First, Plaintiffs argue that Defendants violated their substantive right to family integrity or familial association because Defendants prevented L.A.P. from returning to Charles Peach's home, restricted Plaintiffs' visitation, forced Heather Peach to enter into a parenting plan, and refused to issue an unsubstantiated abuse report given that the marks did not rise to the level required to initiate child protective proceedings. Second, Plaintiffs argue that they were not afforded any process before suffering this liberty deprivation, and thus Defendants violated their right to procedural due process.

### a. Substantive Due Process

Substantive due process claims come in two varieties: "(1) deprivations of a particular constitutional guarantee; and (2) actions that 'shock the conscience.'" *Pittman*, 640 F.3d at 728 (quoting *Valot v. Se. Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1228 (6th Cir. 1997)). Plaintiffs allege that Defendants' conduct violated Plaintiffs' rights to family association. [DE 1 at ¶99]. "The Supreme Court has repeatedly held that '[i]t is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.'" *Schulkers*, 955 F.3d at 539– 540 (quoting *Quilloin v. Walcott*, 434 U.S. 246, 255 (1978) (cleaned up)). "[A] parent's 'desire for and right to the companionship, care, custody and management of his or her children' is an important interest that 'undeniably warrants deference and, absent a powerful countervailing interest, protection.'" *Schulkers*, 955 F.3d at 540 (quoting *Lassiter v. Dept. of Social Services*, 452 U.S. 18, 27 (1981)). "[F]reedom of personal choice in matters of . . . family life is one of the

liberties protected by the Due Process Clause of the Fourteenth Amendment." *Cleveland Board of Education v. LaFluer*, 414 U.S. 632, 639 (1974).

"Indeed, in many ways the right at issue in this case—the right to family integrity and association without interference from the state—is the paradigmatic example of a substantive due process guarantee." *Schulkers*, 955 F.3d at 540. Thus, as recognized by the Sixth Circuit, Plaintiffs' right—or at the very least Charles Peach's right— "to make decisions concerning the care, custody, and control of [their] children" without arbitrary government interference was clearly established at the time of Defendants' conduct. *Id.*

Defendants set forth five arguments as to why Plaintiffs' substantive due process claims fail. The Court will address them in turn.

First, Defendants argue that there is no clearly established right to be free from a dependency, neglect, or abuse investigation or proceeding. [DE 7 at 5]. "Mere investigation by authorities into child abuse allegations without more . . . does not infringe upon a parent's right to custody or control of a child in the same manner." *Kottmyer v. Maas*, 436 F.3d 684, 691 (6th Cir. 2006). Defendants argue that this child abuse investigation did not implicate the right to familial association "absent evidence of bad faith, improper motive, or investigative tactics that shock the conscience." *Id.* n.1

Contrary to Defendants' argument, Plaintiffs substantive due process claim is not solely based on Defendants' investigation into abuse. Defendants ignore the other allegations that Defendants violated their substantive right to family integrity or familial association because Defendants prevented L.A.P. from returning to Charles Peach's home, restricted Plaintiffs' visitation, and forced Heather Peach to enter into a parenting plan. It is significant to note that in *Kottmyer*, on which Defendants rely, plaintiffs made no allegations against the social worker that

17

the child was removed from her parents' custody, either temporarily or permanently, or that the social worker interfered with the Kottmyers' right to custody, control, or companionship of the child. *Kottmyer*, 436 F.3d at 691. In *Kottmyer*, plaintiffs' allegations against the social worker stemmed solely for the investigation. As noted by the Sixth Circuit, "*Kottmyer* teaches that an abuse investigation, *standing alone*, does not interfere with parental rights in a way that requires due process." *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 764 (6th Cir. 2020).

Here, the allegations are just the opposite of *Kottmyer*, and the complaint does not allege "[m]ere investigation . . . without more." *Kottmyer*, 436 F.3d at 691. Plaintiffs specifically allege that L.A.P. was removed from the Plaintiffs' custody temporarily by the social workers' instructions that Charles Peach could not exercise joint custody of his child with the biological mother and could not visit his child unsupervised from September 24, 2021 forward. So, while mere investigations into allegations of child abuse alone do not implicate the right to familial association, depriving a parent of joint custody and implementing restrictions on visitation unilaterally for 25 days do, and it has been so for several years. *See Holliday*, 2020 WL 3217666, at *8 ("By arbitrarily mandating when Holliday could be with her child and who else would have to be present, the Plan abridged Holliday's due process right to family integrity . . . . Consequently, a reasonable jury could find that defendants acted with deliberate indifference towards Holliday's right to make decisions concerning the care, custody, and control of her daughter as it is not a stretch to say that their investigation tactics were arbitrary and reckless and therefore violated traditional notions of fair play and decency.")

With respect to the initial investigation conducted by Defendants in September 2021, Plaintiffs allege that Defendants conducted the investigation in bad faith. As discussed above, "a government investigation of child abuse will not automatically implicate the right to familial

association absent 'evidence of bad faith, improper motive, or investigation tactics that shock the conscience.'" *Kolley v. Adult Protective Servs.*, 725 F.3d 581, 585 (6th Cir. 2013) (quoting *Teets v. Cuyahoga County*, 460 F. App'x 498, 502 (6th Cir. 2012)). Contrary to Defendants' argument, qualified immunity is not proper at this stage of the litigation on the issue of whether the investigation was in bad faith or shocked the conscience. Here, Plaintiffs allege that Defendants accepted the referral and pursued an investigation against Peach despite the fact that the marks on L.A.P. did not meet CHFS's own acceptance criteria for a report of suspected child abuse or neglect. These allegations are sufficient to state a substantive due process claim related to the investigation. *Heithcock v. Tennessee Department of Children's Services*, No. 15-6236, 2016 WL 11786416, at *1–2, *4 (6th Cir. 2016), supports this conclusion. In *Heithcock*, the Sixth Circuit reversed the grant of qualified immunity finding that "because the plaintiff alleged that a child-protective-services employee conducted the investigation in bad faith depriving her of her right to family association, the district court erred by granting the defendant qualified immunity" at the motion to dismiss stage. *Chambers v. Sanders*, 63 F.4th 1092, 1109–1110 n.4 (6th Cir. 2023).

Second, Defendants argue that Plaintiffs' interest in family integrity was outweighed by the state's interest in preventing child abuse. *See Schulkers*, 955 F.3d at 540 (quoting *Bartell*, 215 F.3d at 558 ("Although [the plaintiff] has a fundamental right to raise her son, the State has a concomitant interest in the welfare and health of children in its jurisdiction, and in certain narrowly-defined circumstances, the State's interest in a child's well-being may supersede that of a parent.")). However, as alleged by Plaintiffs, the state did not have any interest in preventing child abuse in the present case because they had no reason to suspect Charles Peach of child abuse at the time that the custody and supervision restrictions were imposed because the marks on L.A.P. did not meet CHFS's own acceptance criteria for a report of suspected child abuse or neglect and

was instead initiated, at least in part, because he sought advice of counsel before speaking to Defendants.  "When, as Plaintiffs allege here, the government prevents a fit [parent] from being alone with [his] children at all times (24/7) without any compelling government interest, it clearly contravenes" substantive due process. *Schulkers*, 955 F.3d at 540–541.

Third, Defendants argue they cannot be liable for violating Plaintiffs' substantive due process rights because to the extent that Plaintiffs suffered a deprivation of their fundamental right to family integrity, that deprivation was perpetrated by the family court who altered the custody of L.A.P., not by Defendants.  However, the records reflect that the family court ordered the temporary placement of L.A.P. only after the October 19, 2021, hearing.  The restrictions placed on Plaintiffs prior to that hearing were precipitated by Defendants.

Fourth, Defendants argue that Plaintiffs' right to familial association was not infringed by Defendants prior to the temporary custody hearing because a parent voluntarily agreed with the CHFS's safety plan.  [DE 7 at 14–15].  Defendants maintain that since the child's biological mother agreed on September 24, 2021, to CHFS's safety plan, Plaintiffs were not deprived of the right of familial association under this authority.  *See Teets*, 460 F. App'x. at 503 ("[A] parent's voluntary consent to a safety plan obviates the need for any additional due process procedures on the part of the agency seeking to remove the child from a parent's custody.").  The Court rejects this argument.  Charles Peach, who shared joint custody with the biological mother, did not agree to any safety plan and did not consent to the 25-day removal of L.A.P. from his home.  Defendants have not cited any caselaw that suggests that Shaylee McDonald's consent to the safety plan waives Charles Peach's substantive due process rights.

Finally, Defendants argue that as a step-parent, Plaintiff Heather Peach does not have standing to bring a claim for infringement of familial integrity.  [DE 7 at 15].  Defendants

acknowledge that neither Kentucky nor Sixth Circuit caselaw address whether there exists a familial integrity right of a step-parent. *Id.* But Defendants cite caselaw from other district courts that have held a step-parent relationship is insufficient for standing on a § 1983 claim. *Id.* at 15–16; *see Bowie v. Texas Dep't of Protective & Regul. Servs.*, No. Civ.A. 5:04CV275-C, 2004 WL 2870078, at *1, n.2 (N.D. Tex. Dec. 13, 2004). Other courts agree. *See Wright v. S. Arizona Children's Advoc. Ctr.*, No. CV-21-00257-TUC-JGZ, 2022 WL 4591827, at *4 (D. Ariz. Sept. 30, 2022) ("Because Plaintiffs' allegations do not establish that she had a legally protected interest as LAW's stepparent, the Court will dismiss Mrs. Wright's familial association claims in Claims Two, Four, and Fifteen to Twenty-Three."); *Kathryn P. v. City of Philadelphia*, No. CIV.A. 97-6710, 1999 WL 391492 at *5 (E.D. Penn. May. 27, 1999) ("a parent may only maintain her own § 1983 claim based on familial integrity where the parent has custody of the child whose rights are violated; non-custodial parents may not maintain familial integrity claims"); *Murphy v. Bitsoih*, 320 F. Supp. 2d 1174, 1184 (D.N.M. 2004) ("The Tenth Circuit has held that a deprivation of the right to familial association, including association between a parent and child, or sibling and sibling, can create a cause of action under Section 1983"). *But see Ramirez v. City of Oxnard*, 2013 WL 12129396, *7 (C.D. Cal. July 23, 2013); *Avelar v. Rodriguez*, No. CV 16-0471-VBF (AGR), 2018 WL 3636981, at *6 (C.D. Cal. June 13, 2018) ("Stepparents by marriage may also have protected due process interests.").

In arguing that Heather Peach has standing, Plaintiffs cite to KRS §530.020, a statute on incest because it lists as one of the prohibited relationships as between a step-child and step-parent. [DE 11 at 11]. Although a step-parent can be guilty of incest, that does not address the standing issue. The Court is persuaded by the caselaw above and finds that Heather Peach does not have standing to bring these claims for violation of familial integrity.

For the reasons set forth above, the Court **denies** Defendants' Motion to Dismiss Plaintiffs' substantive due process rights.   Heather Peach's Fourteenth Amendment substantive and procedural due process claims will be dismissed for lack of standing.

### b.  Procedural Due Process

To establish a violation of procedural due process rights, a plaintiff must show "(1) that [they were] deprived of a protected liberty or property interest, and (2) that such deprivation occurred without the requisite due process of law." *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich.*, 470 F.3d 286, 296 (6th Cir. 2006) (citing *Thomas v. Cohen*, 304 F.3d 563, 576 (6th Cir. 2002)); *see also* Kovacic, 809 F. Supp. 2d at 775 ("A Fourteenth Amendment procedural due process claim depends upon the existence of a constitutionally cognizable liberty or property interest with which the state has interfered."), *aff'd*, 724 F.3d 687 (6th Cir. 2013).   "[D]ue process requires that when a State seeks to terminate [a protected] interest …, it must afford 'notice and opportunity for hearing appropriate to the nature of the case' before the termination becomes effective." *Bell v. Burson*, 402 U.S. 535, 542, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950)).

"[E]ven for temporary deprivations of custodial rights, parents are generally entitled to a hearing 'within a reasonable time.'" *Teets*, 460 F. App'x at 503 (quoting *Eidson v. Tenn. Dep't of Child. Servs.*, 510 F.3d 631, 635 (6th Cir. 2007)).   These hearings are only required when a child's removal "is instituted or sustained over the parents' objections." *Id.* (citing *Smith v. Williams - Ash*, 520 F.3d 596, 600 (6th Cir. 2008)).   The Sixth Circuit further explained that "a parent's voluntary consent to a safety plan obviates the need for any additional due process procedures on the part of the agency seeking to remove the child from a parent's custody." *Id.*

The Court previously determined that Peach sufficiently alleged that Defendants infringed on his rights of family integrity or familial association.  Furthermore, based on the above case law, Defendants had "fair warning" that it would be unconstitutional to interfere with Peach's right to the companionship of L.A.P. without any procedural protections or without valid consent. *Schulkers*, 955 F.3d at 533; *Hancock v. Miller*, 852 F. App'x 914, 924 n. 4 (6th Cir. 2021) ("To be sure, a parent may prevail on a procedural due process claim for failure to provide a pre-deprivation hearing before interfering with their family integrity."); *Bambach v. Lapeer Cnty.*, No. 18-14039, 2020 WL 2812758, at *8 (E.D. Mich. May 29, 2020) (denied a motion to dismiss the procedural due process claim where social workers "removed" the children from the custodial parents' home by informing the custodial parent that the children would be staying with the non-custodial parent). Therefore, the ultimate question is whether Plaintiffs alleged sufficient facts to support an inference that this deprivation occurred without adequate procedural safeguards.

Defendants argue that Plaintiffs received adequate procedural safeguards and, therefore, no procedural due process violation occurred.  First, Defendants argue that Plaintiffs received a hearing before a neutral officer which satisfied their procedural due process rights, and that if a deprivation of family integrity occurred, that deprivation was perpetrated by the family court, not the social workers.  [DE 7 at 10].  Contrary to Defendants' argument, Plaintiffs are not seeking to hold them responsible for a procedural due process claim based on the October 19, 2021, temporary custody hearing.  Instead, Plaintiffs argue that they were afforded no process before Defendants (1) unilaterally removed L.A.P. from their care on September 24, 2021, and (2) instructed them that L.A.P. would remain in the sole custody of the biological mother.  No hearing was set at that time, and it was not until the expiration of the mother's safety plan on October 8, 2021, that Defendant Hagerman filed the petition for Neglect and Abuse.  Thus, because Plaintiffs'

procedural due process claim stems from the alleged pre-hearing denial of process—none of which was perpetrated by the family court.

Second, Defendants argue that Plaintiffs were afforded all the process required by Kentucky law, and if they believed it insufficient, the remedy is to plead the unconstitutionality of the statutory scheme.  [DE 17 at 10 (citing KRS §§ 620.050, 620.040, 620.070)].  Specifically, Defendants contend that it is clear from the Kentucky statutory scheme that CHFS may need to request the child be taken by someone other than the alleged abuser; and, in this case, an "emergency custody via a court order" was not needed because the child was in the care of his biological mother pursuant to a voluntary safety plan.  [*Id.*].

Despite Defendants' argument to the contrary, "[t]he extent to which Defendant[s] complied with . . . a state statute[] does not determine the extent to which [they] complied with federal constitutional due process requirements."  *Maley v. Welch*, No. 16-10744, 2018 WL 1456210, at *13 (E.D. Mich. Mar. 23, 2018) (citing *Jon Jon's Inc. v. City of Warren*, 162 F. Supp. 3d 592, 602 (E.D. Mich. 2016) ("The Supreme Court has explained that the question regarding what process is due is not answered by state law or local ordinances but by constitutional benchmarks.") (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541–42 (1985)), aff'd, 700 F. App'x 436 (6th Cir. 2017)); *see also Roberts v. Girder*, 237 F. Supp. 3d 548, 555 (E.D. Ky. 2017).

Bottom line, "a state must afford a parent fair process before interfering with a parent's fundamental right to family integrity and the companionship of his or her children."  *Schulkers*, 955 F.3d at 543.  "The only exception to this rule is when a parent voluntarily consents to the terms of a safety plan without duress."  *Id.* (citations omitted).  Here, the complaint alleges sufficient facts to support a claim that Peach's procedural due process rights were abridged.  *Eidson v. State*

*of Tennessee Dep't of Children's Servs.,* 510 F.3d 631, 635 (6th Cir. 2007).  Plaintiff alleges that Defendants did not provide him with any process before removing L.A.P. from his care on September 24, 2021, and vesting sole custody and care to L.A.P.'s biological mother.  [DE 1 at ¶98; DE 11 at 14].  Furthermore, Peach alleges that he did not consent to the removal of L.A.P. by the social workers.  As such, Defendants are not entitled to qualified immunity on this claim as it relates to the conduct of removing L.A.P. from Peach's custody prior to the October 19, 2021, temporary removal hearing.

### D.  State Law Claims

Plaintiffs remaining claims are state law claims and include (1) a claim for malicious prosecution at common law [DE 1 at ¶86–93] and (2) tort of outrage [*Id.* at ¶102–105].  The Court has original jurisdiction over Plaintiffs' § 1983 claims.  28 U.S.C. § 1331.

### 1.  Malicious Prosecution

The requirements for a plaintiff to proceed with a malicious prosecution under Kentucky common law are similar to its federal counterpart.  The Kentucky Supreme Court explained that "[a] malicious prosecution action may be established" where the plaintiff demonstrates five separate elements: (1) the defendant initiated, continued, or procured a criminal or civil judicial proceeding, or an administrative disciplinary proceeding against the plaintiff; (2) the defendant acted with probable cause; (3) the defendant acted with malice, which, in the criminal context, means seeking to achieve a purpose other than bringing an offender to justice… (3) the proceeding … terminated in favor of the person against whom it was brought; and (5) the plaintiff suffered damages as a result of the proceeding.  *Martin v. O'Daniel*, 507 S.W.3d 1, 11–12 (Ky. 2016).  The key difference between an action under § 1983 and the Kentucky common law is that the former

does not require a showing of malice, while the latter does. *Duncan v. Newby*, No. 5:17-CV-137-TBR, 2018 WL 627573, at *4 (W.D. Ky. Jan. 29, 2018).

Defendants argue that Plaintiffs' claim for malicious prosecution at common law fails to state a claim upon which relief can be granted and must therefore be dismissed.  First, Defendants argue that Plaintiffs cannot meet the first element.  Defendants contend that the family court accepted the petition and at the temporary removal hearing the court ordered the child remain with McDonald during the pendency of the action; consequently, the court necessarily found probable cause or the case could not have continued.  [DE 7 at 8].  Second, Defendants argue that Plaintiffs cannot meet the third element.  Defendants claim that a bare allegation of malice is not entitled to be taken as true under *Iqbal*.  [*Id.*].  Defendants also argue that this Court cannot rely upon the family court's final order to infer malice, which did not analyze the circumstances at the time of the alleged violation during CHFS's investigation.  [DE 17 at 13].

Plaintiffs' Complaint alleges that "Defendants pursued the dependency, neglect, and abuse claims against Plaintiffs with complete absence of abuse or so little evidence that it would not even provide probable cause to support the claims."  [DE 1 at ¶76].  The Complaint also alleges that "Defendants' initiation and/or continuance of the dependency, neglect, and abuse action interfered or otherwise violated Plaintiffs' constitutional rights as they lacked probable cause and overwhelming evidence clearly demonstrated that they had no reason to continue to prosecute the action."  [*Id.* at ¶89].  Plaintiffs claim that Defendant Hagerman stated that "she filed the petition, in part, because she had placed the child outside the care of the Father and had required his contact to be supervised."  [DE 11-1 at 10].

Plaintiffs claim that "Defendants' conduct was done with malice, knowing that there was absolutely no evidence of any harm befalling L.A.P. . . . ."  [*Id.* at ¶90].  Plaintiffs further allege

that Defendants sought to "achieve a purpose other than bringing Plaintiffs to justice, and/or to achieve a purpose other than the proper adjudication of the claim upon which the underlying proceeding was based."   [*Id.*].   And Plaintiffs claim that "there was overwhelming exculpatory evidence, and instead of dismissing the action, Defendants prosecuted the action until a judge terminated the case in Plaintiffs' favor."   [*Id.* at ¶91].

Taking Plaintiffs' allegations as true, the Court declines to grant Defendants' Motion to Dismiss on Plaintiff's common law malicious prosecution claim.

## 2.   Intentional Infliction of Emotional Distress

Kentucky law recognizes the tort of outrageous conduct which is also known as intentional infliction of emotional distress ("IIED").   *See Craft v. Rice*, 671 S.W.2d 247, 249 (Ky. 1984).   In To establish a claim for IIED under Kentucky law: "1) the wrongdoer's conduct must be intentional or reckless; 2) the conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality; 3) there must be a causal connection between the wrongdoer's conduct and the emotional distress; and 4) the emotional distress must be severe."   *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 788 (Ky. 2004) *overruled on other grounds by Toler v. Sud-Chemie, Inc.*, 458 S.W.3d 276 (Ky. 2014).   Also, under Kentucky law, "IIED serves as a 'gap filler' to provide a remedy when other means of redress are unavailable." *Bogle v. Luvata Franklin, Inc.*, No. 1:12-CV-00200-TBR, 2013 WL 1310753, at *2 (W.D. Ky. Mar. 28, 2013) (citing *Brewer v. Hillard*, 15 S.W.3d 1, 8 (Ky. Ct. App. 1999; *Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 299 (Ky. Ct. App. 1993)).

Defendants argue that "being investigated for child abuse cannot be considered outrageous conduct because when the gravamen of the complaint is a constitutional violation or tort claim for which emotional damage awards are possible, the tort of outrage is not available."   [DE 7 at 18].

Defendants also contend "[w]hen a plaintiff seeks emotional distress under a Constitutional claim, it defeats the gap-filler principle to allow an outrageous conduct claim." [*Id.*].

Plaintiffs allege that "Defendant Hagerman's and Defendant Morris' decision to continue their investigation into Plaintiffs and file a petition with the court, despite lack of evidence suggest that L.A.P. was an abused and/or neglected child, was intentional and reckless." [DE 1 at ¶103]. Plaintiffs further allege that Defendants' conduct was "outrageous and intolerable and offends the generally accepted standards of decency and morality." [*Id.* at ¶104]. Plaintiffs allege that Defendants' conduct caused Plaintiffs' severe and emotional distress and humiliation. [*Id.* at ¶105].

"Kentucky courts, and federal courts interpreting Kentucky law, tend to dismiss IIED claims when a plaintiff pleads another tort such as assault, battery, or malicious prosecution that provides essentially the same recovery, i.e., instances where IIED is a tag-along state-law claim." *Holliday*, 2020 WL 3217666, at *11. Here, Plaintiffs have pled a malicious prosecution claim. "Nonetheless, '[t]he tort of outrage is still a permissible cause of action, despite the availability of more traditional torts, as long as the defendants solely intended to cause extreme emotional distress.'" *Estep v. Combs*, 366 F. Supp. 3d 863, 887 (quoting *Green v. Floyd Co., Ky.*, 803 F. Supp. 2d 652, 655 (E.D. Ky. 2011)). Plaintiffs have pled no facts from which the Court can reasonably infer that Defendants "solely intended to cause extreme emotional distress." *Id.*; *see Ashcroft*, 556 U.S. at 678. Therefore, Plaintiffs have failed to state a claim for intentional infliction of emotional distress.

### 3.  Punitive Damages

Finally, Plaintiffs allege they are entitled to punitive damages in Count V. [DE 1 at ¶107–108]. This cause of action will be dismissed inasmuch as such a claim is not appropriately asserted

as an independent count in a complaint.  Notwithstanding, "Plaintiff[s] may still recover punitive damages should the evidence support such a finding." *Archey v. AT&T Mobility, LLC*, No. 17-91-DLB-CJS, 2017 WL 6614106, at *4 (E.D. Ky. Dec. 26, 2017).  Accordingly, the Court **grants** Defendants' Motion to Dismiss as to this count.

## IV.   CONCLUSION

For the reasons above, and being otherwise sufficiently advised, **THE COURT ORDERS AS FOLLOWS**:

(1) Defendants' Motion to Dismiss [DE 7] regarding Count I is **GRANTED**;

(2) Defendants' Motion to Dismiss [DE 7] regarding Count II is **DENIED**;

(3)  Defendants' Motion to Dismiss [DE 7] regarding Count III is **DENIED**;

(4) Defendants' Motion to Dismiss [DE 7] regarding Count IV is **GRANTED**;

(5) Defendants' Motion to Dismiss [DE 7] regarding Count V is **GRANTED**;

(6) Plaintiffs' Motion to Stay [DE 10] is **DENIED**.

June 2, 2023

Rebecca Grady Jennings, District Judge
United States District Court

Copies to:      Counsel of record

29