UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CHARLES PEACH, ET AL.                                               *Plaintiffs*

v.                                                     Civil Action No. 4:22-cv-000133-RGJ

AIYANNA HAGERMAN, ET AL.                                           *Defendants*

* * * * *

**MEMORANDUM OPINION AND ORDER**

Plaintiff Charles Peach ("Peach") moves to dismiss Defendant Aiyanna Hagerman's ("Hagerman") and Defendant Vanessa Morris' ("Morris") (collectively, "Defendants") counterclaims. Defendants responded, [DE 38], and Peach replied. [DE 40]. Peach moves to strike Defendant's response, [DE 39], and for expedited review pursuant to Kentucky's Uniform Public Expression Protection Act ("KUPEPA"). [DE 41]. Responses and replies were filed to both motions. [DE 43; DE 44; DE 45; DE 47]. The parties also jointly moved to set a status conference. [DE 46]. These matters are ripe. For the reasons below, Peach's motion to strike [DE 39] and motion to dismiss [DE 37] are **DENIED**, Peach's motion for expedited review [DE 41] is **DENIED**, and the joint motion for a status conference [DE 46] is **DENIED** as **MOOT**.

## I.       BACKGROUND

The Court incorporates the procedural and factual background set forth in its order partially granting Defendants' motion to dismiss, [DE 19], and order denying Defendants' motion for reconsideration [DE 28].

On September 10, 2023, Hagerman and Morris independently filed Answers to Peach's Complaint and Counterclaims against Peach for "Defamation/Defamation per se." [DE 34; DE 35]. On September 15, 2023, Peach moved to dismiss for failure to state a claim, arguing that Kentucky's statute of limitations bars the Defendants' Counterclaims. [DE 37 at 287]. On October

1

17, 2023, Defendants responded, arguing that the statute of limitations was tolled because the Complaint was timely filed, and their counterclaims are compulsory. [DE 38 at 290-91]. On October 31, 2023, Peach moved to strike Defendants' response as untimely, [DE 39], and replied to the motion to dismiss. [DE 40]. On November 21, 2023, Defendants responded to the motion to strike, arguing that the motion to strike should be denied because there is no prejudice to Peach. [DE 43 at 344]. On December 4, 2023, Peach replied, again arguing that the filing should be stricken because it was untimely. [DE 45 at 369].

After Peach filed the motion to strike but before the response and reply were filed, on November 9, 2023, Peach also moved for expedited relief pursuant to the KUPEPA, 454.460 *et seq.* [DE 41]. On November 11, 2023, Defendants responded, arguing that the KUPEPA on its face does not retroactively apply because it was enacted after the videos at issue were posted, and in any event, does not substantively apply. [DE 44]. On December 14, 2023, Peach replied, arguing that: (1) the KUPEPA was not being applied retroactively because the counterclaims were filed after the KUPEPA was enacted; and (2) Defendants failed to substantively satisfy the statute. [DE 47 at 374-76].

On December 4, 2023, the parties jointly moved to set a status conference to discuss whether the KUPEPA applies. [DE 46 at 371]. On March 11, 2024, the parties jointly moved to extend all discovery deadlines, [DE 48 at 388], which was referred to the Magistrate Judge.

## II.      STANDARDS

Federal Rule of Civil Procedure 12(b)(6) instructs that a court must dismiss a complaint if the complaint "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss,

courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party. *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted). "But the district court need not accept a bare assertion of legal conclusions." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citation omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "A complaint will be dismissed . . . if no law supports the claims made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561–64).

Rule 12(d) of the Federal Rules of Civil Procedure provides that, if "matters outside the pleadings are presented and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." The Court, however, "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein" without converting to a summary judgment. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

### III.   DISCUSSION

**1.  Peach's Motion to Strike. [DE 39].**

Peach moves to strike Defendants' response to the motion to dismiss as untimely and filed without a request for extension.  [DE 39 at 300]. Peach argues that "under Rule 12(f)(2) of the Federal Rules of Civil Procedure, 'the court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter,' and it may do so 'on motion made by a party . . . before responding to the pleading.'" [DE 39 at 300].  Peach then cites Local Rule 7.1(c), which provides that "a party opposing a motion must file a response within 21 days of service of the motion. Failure to timely respond to a motion may be grounds for granting the motion." *Id.* Peach's motion to dismiss was filed on September 15, 2023; Defendants' response was filed on October 17, 2023, eleven days late under the local rules. [*See* DE 37; DE 38].  Defense counsel responds that the late response was due to an inadvertent mistake in calendaring and that the Court "should exercise its discretion not to strike the pleading based upon excusable neglect." [DE 43 at 344].

As an initial matter, FRCP 12(f)(2) only applies to "pleadings," and a response brief is not a pleading pursuant to FRCP 7. As a result, FRCP 12(f)(2) does not apply. Instead, the applicable rule is FRCP 6(b), relating to the extension of time to respond. When a party responds after the deadline has passed, a district court may grant an extension "only if her failure to act resulted from excusable neglect." *Howard v. Nationwide Prop. & Cas. Ins. Co.,* 306 F. App'x 265, 266 (6th Cir. 2009) (citing Fed.R.Civ.P. 6(b)(1)(B)). "Although inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect, it is clear that 'excusable neglect' under Rule 6(b) is a somewhat elastic concept and is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Osterman v. Gen. R.V.*

*Ctr., Inc.,* 2020 WL 6708873, at *11 (E.D. Mich. Nov. 16, 2020) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.*, 507 U.S. 380, 392 (1993)). To determine whether a failure to file a response within the allotted time constitutes excusable neglect, this court weighs the following factors: (1) the danger of prejudice to the opposing party, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, (4) whether the delay was within the reasonable control of the late-filing party, and (5) whether the late-filing party acted in good faith. *Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 522 (6th Cir. 2006) (citing *Pioneer Inv. Servs. Co.*, 507 U.S. at 395). The court should "tak[e] account of all relevant circumstances surrounding the party's omission." *Pioneer,* 507 U.S. at 395.

An attorney's "failure to place the deadline for responding on his calendar," may be excusable neglect where there is "no prejudice to the opposing party or efficient judicial administration," *Howard,* 306 F. App'x at 267. For example, in *Ingram v. Oasis Investments, LLC*, counsel filed a motion more than three months after the 21 days provided in Local Rule 7.1(c), explaining that the "untimeliness was due to a calendaring error." No. 5:16-CV-00206-TBR, 2017 WL 6508362, at *10 (W.D. Ky. Dec. 19, 2017). The court denied plaintiff's motion to strike, reasoning that "[plaintiffs] offer no justification for striking [defendants'] response other than the fact that the response was untimely filed. In other words, they have identified no alleged bad faith or ascertainable prejudice as a result of the late filing." *Id*.

In weighing the applicable factors, first, while Peach asserts a risk of prejudice, he identifies no ascertainable prejudice caused by Defendants' late response. [DE 45 at 367].  Second, as to the length of the delay, it is minimal, only eleven days. Third, as to the reason for the delay, like counsel in *Ingram*, Defendants' counsel explained that "she marked the due date erroneously

on her calendar without realizing." [DE 43 at 344]. Fourth, as to control of the delay, this was clearly within counsel's control.

As to the fifth factor, whether the delay was in bad faith, Peach argues that Defendants have "demonstrated a pattern of dilatory behavior which risks prejudice to [Peach] and therefore rises to the striking threshold." [DE 45 at 367]. Peach asserts that because Defendants requested two extensions of time, filed their Answers approximately a year after the complaint was filed, and responded late, "that Defendants plan to continue to litigate this case at their own pace with little regard for this Court or its rules." [*Id.*].

The Court disagrees that there is a pattern of delay suggesting bad faith. To begin, by agreement of the parties, Peach also moved for an extension of time to respond. [DE 8]. Moreover, between the filing of the Complaint and the Defendants' Answers, the parties also filed a motion to dismiss, [DE 7], a motion to stay a ruling on the motion to dismiss pending discovery, [DE 10], and a motion for reconsideration. [DE 21]. Responses and replies were filed to all three motions. After the Court granted an extension of time for Defendants to file an answer, [DE 33], Defendants timely filed their Answers. Contrary to Peach's argument, Defendants did not simply "wait[] nearly a year" to file their Answers, [DE 45 at 367], but engaged in the normal course of litigation. Peach offers no justification for striking Defendant's response other than the fact that it was eleven days late. As a result, the Court **DENIES** Peach's motion to strike.

## 2. Peach's Motion to Dismiss.  [DE 37].

Peach argues that Defendants' Counterclaims are barred by Kentucky's one-year statute of limitations because the allegedly defamatory videos were published between February 28, 2022, and March 27, 2022, and Defendants' counterclaims were filed over one year later, on September 10, 2023. [DE 37 at 285; *see* DE 34 at 257-61; DE 35 at 270-74]. Peach also argues that the "single

6

publication" rule, where the statute of limitations begins running when the allegedly defamatory material is originally posted to a website, also bars Defendants' counterclaims. [DE 37 at 286].

In Kentucky, the statute of limitations for a defamation claim is one year. *Lee v. Stanley*, No. 2015-CA-001264-MR, 2017 WL 465319, at *4 (Ky. Ct. App. Feb. 3, 2017) (citing *Caslin v. Gen. Elec. Co.*, 608 S.W.2d 69, 70 (Ky. App. 1980); KRS 413.140 (1)(d)). If a complaint is timely filed, and a defendant asserts "counterclaims which were connected with or grew out of the events or transactions that were the basis of the suit," the counterclaims are also timely. *L.C. Charters, Inc. v. Mel's Multi-Serv.,* No. 2009-CA-002114-MR, 2011 WL 5244821, at *2 (Ky. Ct. App. Nov. 4, 2011) (citing *Armstrong v. Logsdon*, 469 S.W.2d 342 (Ky.1971) (holding that when a plaintiff's claim is not barred by the statute of limitations, a compulsory counterclaim may be brought "even though the limitation period has elapsed between the time of the commencement of the suit and the serving of the counterclaim.")).

Rule 13 requires a party to "state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a)(1). In determining whether a counterclaim arises out of the same transaction or occurrence, the court looks to whether there is "a logical relationship between the two claims." *Bauman v. Bank of Am., N.A.*, 808 F.3d 1097, 1101 (6th Cir. 2015) (citing *Maddox v. Ky. Fin. Co.*, 736 F.2d 380, 382 (6th Cir.1984)). "Under this test, we determine whether the issues of law and fact raised by the claims are largely the same and whether substantially the same evidence would support or refute both claims." *Id.* (citing *Sanders v. First Nat'l Bank & Trust Co. in Great Bend*, 936 F.2d 273, 277 (6th Cir.1991)). The Court partially granted Defendants' motion to dismiss and dismissed Peach's

Fourth Amendment malicious prosecution claim, Heather Peach's Fourteenth Amendment substantive and procedural due process claims, Peach's state law claim for intentional infliction of emotional distress, and Peach's independent claim for punitive damages. [DE 19 at 191]. Peach's remaining claims are 42 U.S.C. § 1983 claims for Fourth Amendment seizure, Fourteenth Amendment violation of substantive and procedural due process, and a Kentucky common law malicious prosecution claim. [*See* DE 19]. The Defendants' counterclaims allege state law defamation and defamation *per se* claims against Peach. [DE 34 at 261; DE 35 at 274].

Although Peach is correct in that the elements for his claims are different from those for the Defendants' counterclaims, that does not end the Court's analysis. For example, Peach's procedural due process claim requires "(1) that [they were] deprived of a protected liberty or property interest, and (2) that such deprivation occurred without the requisite due process of law." *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich.*, 470 F.3d 286, 296 (6th Cir. 2006) (citing *Thomas v. Cohen*, 304 F.3d 563, 576 (6th Cir. 2002)). Peach's malicious prosecution claim requires that:

1) the defendant initiated, continued, or procured a criminal or civil judicial proceeding . . . against the plaintiff;
2) the defendant acted without probable cause;
3) the defendant acted with malice, which, in the criminal context, means seeking to achieve a purpose other than bringing an offender to justice . . .;
4) the proceeding . . . terminated in favor of the person against whom it was brought; and
5) the plaintiff suffered damages as a result of the proceeding.

*Estep v. Combs*, 467 F. Supp. 3d 476, 498–99 (E.D. Ky. 2020) (citing *Martin v. O'Daniel*, 507 S.W.3d 1, 11–12 (Ky. 2016)).

Defendants' defamation counterclaim requires "(1) defamatory language; (2) about the plaintiff; (3) which is published; and (4) which causes injury to reputation." *Curtis v. Sumerall*,

No. 3:20-CV-735-CRS, 2023 WL 2469900, at *9 (W.D. Ky. Mar. 10, 2023) (citing *Biber v. Duplicator Sales & Serv., Inc.*, 155 S.W.3d 732, 736 (Ky. App. 2004).

While Peach's claims and Defendants' counterclaims "contain different elements, both involve the same critical events." *Gen. Drivers, Warehousemen & Helpers Loc. Union No. 89 v. Winstead*, No. 3:03-CV-791-S, 2005 WL 8176247, at *2 (W.D. Ky. Feb. 28, 2005). As Peach asserts, his claims "are based around whether probable cause existed to remove L.A.P. from the home, whether they were deprived of a protected liberty interest without due process, and deprived of the right to raise L.A.P." [DE 40 at 312]. Some of the allegedly defamatory statements in Defendants' counterclaims are that Defendants were "[c]riminals that terrorized my family! Broke the law to kidnap my child from me," [DE 34 at 258], Defendants "did all kinds of things . . . without reasonable cause," [*id*.at 260], and that Defendants "violated the law and I am going to expose them." [*Id*.] Peach alleges in his Complaint that Defendants broke the law; Defendants' Counterclaims allege that those statements are false. The evidence to support or refute both claims is substantially the same—for instance, if the evidence shows that Defendants acted without probable cause, then Peach's statement that Defendants acted without reasonable cause would not be defamatory. Accordingly, Defendants' Counterclaims arise out of the same transaction or occurrence as Peach's claims, making them timely compulsory Counterclaims.

Peach argues that *Armstrong* does not apply because it "is a ruling on Kentucky state court procedure. This Court, as a federal district court, is not obligated to follow its holding in any sense." [DE 40 at 309]. Yet as the Supreme Court has noted, "we have generally referred to state law for tolling rules, just as we have for the length of statutes of limitations." *Wallace v. Kato*, 549 U.S. 384, 394, 127 S. Ct. 1091, 1098, 166 L. Ed. 2d 973 (2007) (citing *Hardin v. Straub*, 490 U.S. 536, 538–539, 109 S.Ct. 1998, 104 L.Ed.2d 582 (1989)); *see also Stoner v. Percell*, No. 3:13-CV-

9

00762-CRS, 2014 WL 6611557, at *4 (W.D. Ky. Nov. 20, 2014) ("By incorporating the state limitation period and tolling rules, federal law defers to the state's judgment in balancing the competing policies of enforcement and repose."). In *Armstrong*, the court held that when a plaintiff timely files an action, "he has effectively tolled the running of the statute as to the occurrence involved." 469 S.W.2d at 343. As a result, the tolling rule outlined in *Armstrong* properly applies to the Court's analysis, and the Court **DENIES** Peach's motion to dismiss.

### 3. Peach's Motion for Expedited Relief pursuant to the KUPEPA. [DE 41].

Peach also moves for expedited relief pursuant to the KUPEPA. [DE 41]. The KUPEPA functions as an "anti-SLAPP" statute.[1] States enact such statutes to "decrease the 'chilling effect' of certain kinds of libel litigation and other speech-restrictive litigation . . . by making it easier to dismiss defamation suits at an early stage of the litigation." *La Liberte v. Reid*, 966 F.3d 79, 85 (2d Cir. 2020) (citing *Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328, 1332 (D.C. Cir. 2015). Peach argues that Defendants' counterclaims are subject to the KUPEPA because the statute "is intended to provide procedures to dismiss legal actions filed in response to a party's exercise of free speech [and] prevent the filing of frivolous claims that may inhibit public expression." [DE 47 at 375]. Peach also argues that although the allegedly defamatory statements were made before the KUPEPA was enacted—which, absent a provision making the statute apply retroactively, would make it inapplicable—the statute still applies because Defendants' counterclaims were asserted after the statute was enacted. [*Id*. at 374-75; DE 41 at 324].

Yet Peach's arguments assume the answer to a fundamental question: whether the KUPEPA applies at all, or if its dismissal procedures are preempted by the Federal Rules of Civil

---

[1] "SLAPP" is an acronym standing for "strategic lawsuits against public participation." *See Santoni v. Mueller*, No. 3:20-cv-00975, 2022 U.S. Dist. LEXIS 4336, 2022 WL 97049, at *14 (M.D. Tenn. Jan. 10, 2022).

Procedure. The Supreme Court has outlined a two-part test to determine whether a state procedural rule is preempted by the Federal Rules. A district court must first determine whether a Federal Rule "answers the question in dispute." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398, 130 S. Ct. 1431, 1437, 176 L. Ed. 2d 311 (2010). If it does, "it governs—[state law] notwithstanding—unless it exceeds statutory authorization or Congress's rulemaking power." *Id.* (citing *Burlington N.R. Co. v. Woods,* 480 U.S. 1, 4–5, 107 S.Ct. 967, 94 L.Ed.2d 1 (1987); *Hanna v. Plumer,* 380 U.S. 460, 463–464, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965)).

Although the Sixth Circuit recently ordered briefing on whether Tennessee's anti-SLAPP statute applies in federal court, it has not yet ruled on the applicability of the dismissal procedures in the KUPEPA or other anti-SLAPP statutes. *See Garner v. Ean Holdings, LLC*, No. 23-5629, 2024 U.S. App. LEXIS 54, at *3 (6th Cir. Jan. 2, 2024); s*ee also Apex Bank v. Rainsford*, 2022 U.S. App. LEXIS 32277, *8-9 ("The district court explained that Tennessee's anti-SLAPP statute's procedural framework does not apply in federal court because it conflicts with the Federal Rules of Civil Procedure. We assume, without deciding, that this is correct[.]") (internal citations omitted). The other circuit courts are split on this issue. The Second, Fifth, Tenth, Eleventh, and D.C. Circuits have refused to apply various anti-SLAPP statutes in federal court, reasoning the statutes imposed heightened pleading standards that conflicted with the standards dictated by Rules 8, 12, and 56. *See La Liberte v. Reid*, 966 F.3d 79, 86-88 (2d Cir. 2020); *Klocke v. Watson*, 936 F.3d 240, 244-49 (5th Cir. 2019); *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1349-57 (11th Cir. 2018); *Los Lobos Renewable Power, LLC v. AmeriCulture, Inc.,* 885 F.3d 659, 668-73 (10th Cir. 2018); *Abbas,* 783 F.3d at 1333-37. The First and Ninth Circuits disagree, holding that Maine's and California's anti-SLAPP statutes, respectively, do not conflict with the Rules. *Godin v. Schencks*, 629 F.3d 79, 86-87 (1st Cir. 2010); *CoreCivic, Inc. v. Candide Grp., LLC*, 46 F.4th

1136, 1142. Moreover, the KUPEPA is a new statute, codified in 2022, and no court—state or federal—has considered whether it applies in federal court. As a result, other district court's interpretation of similar anti-SLAPP laws in our circuit provide a helpful framework for analysis.

Like the KUPEPA, Tennessee's anti-SLAPP statute (the "TPPA") first requires the petitioning party to make a *prima facie* case that the statute applies; if it does so, "the court shall dismiss the legal action unless the responding party establishes a prima facie case for each essential element of the claim in the legal action." *Mucerino v. Martin*, No. 3:21-CV-00284, 2021 WL 5585637, at *5 (M.D. Tenn. Nov. 30, 2021); TCA § 20-17-105(a). The court in *Mucerino* held that Tennessee's statute did not apply, noting that there "is the difference in the burden on the plaintiff, who, under the TPPA, must actually 'establish' elements of his claim instead of simply pleading his claims adequately to defeat a motion to dismiss pursuant to Rule 12(b)(6)." *Id*. at *6. The court also observed that there was a difference in the evidence presented to the court, as the TPPA allows a court to consider "supporting and opposing sworn affidavits," which Rule 12(b)(6) does not permit. *Id*. The court explained:

> [Plaintiff] has filed motions pursuant to Rule 12(b)(1) and Rule 12(b)(6)—which is what a person in his position *should* do under the Rules—but he has also filed a separate "petition" pursuant to the TPPA, which certainly seems, on its face, to be a means of circumventing the ordinary allocation of burdens imposed by Rule 12(b) and developed, in federal caselaw, over many years and countless incremental decisions.

*Id.* (M.D. Tenn. Nov. 30, 2021). For these reasons, the court concluded that there was a "'direct collision' between the Federal Rule[s] and . . . state law, at least in terms of how the court should consider requests for dismissal filed immediately after the filing of a complaint." *Id*.

Similar to the statute in *Mucerino*, KRS § 454.472 provides in relevant part that the court "shall dismiss with prejudice a cause of action, or part of a cause of action" if the responding party "fails to establish a prima facie case as to each essential element of the cause of action,"

§ 454.472(1)(c)(1)(a), "fail[s] to state a cause of action upon which relief can be granted," § 454.472(1)(c)(1)(b), or "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." § 454.472(1)(c)(1)(c).[2] As the court explained in *Mucerino*, establishing a *prima facie* case is a higher burden than "simply pleading [] claims adequately" as required by Rule 12(b)(6). Moreover, KRS § 454.470 provides that "in ruling on a motion under KRS 454.464, the court shall consider the pleadings, the motion, any reply or response to the motion, and any evidence that could be considered in ruling on a motion for summary judgment." This is in direct contrast with Rule 12(d), which states that "if, on a motion under Rule 12(b)(6) . . .  matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Like the moving party in *Mucerino*, Peach's motions illustrate the conflict between the Federal Rules and the KUPEPA: Peach has filed both a motion to dismiss under Rule 12(b)(6) and the KUPEPA, prevailing under the latter if the Defendants fail *any* of the three tests (fails to establish a *prima facie* case as to each essential element, *or* fails to state a claim, *or* fails to show a genuine issue as

---

[2] The full text of KRS § 454.472 provides that:

(1) In ruling on a motion under KRS 454.464, the court shall dismiss with prejudice a cause of action, or part of a cause of action, if:

(a) The moving party establishes under KRS 454.462(1) that KRS 454.460 to 454.478 applies;

(b) The responding party fails to establish under KRS 454.462(2) that KRS 454.460 to 454.478 does not apply; and

(c) Either:

1. The responding party fails to establish a prima facie case as to each essential element of the cause of action; or

2. The moving party establishes that:

a. The responding party failed to state a cause of action upon which relief can be granted; or

b. There is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the cause of action or part of the action.

to any material fact)—all while applying the evidentiary standard of a motion for summary judgment. If the KUPEPA applied in federal court, the responding party would, in effect, be forced to defend every motion filed under the KUPEPA as if it were a motion for summary judgment. In applying the procedure outlined in the KUPEPA, the Court therefore "would be adjudicating those claims in a manner not contemplated or authorized by the Federal Rules." *Mucerino*, 2021 WL 5585637, at *6. As a result, the first prong of the test supports preemption.

Turning to the second prong, whether the Federal Rules exceed statutory authorization or Congress's rulemaking power, courts have uniformly upheld the Rules as valid. *See, e.g.*, *Shady Grove*, 559 U.S. at 407 (noting that "we have rejected every statutory challenge to a Federal Rule that has come before us"); *see also Abbas*, 783 F.3d at 1336 ("It follows that Rules 12 and 56 are valid under the Rules Enabling Act."); *Carbone*, 910 F.3d at 1357 ("We have little difficulty concluding that Rules 8, 12, and 56 comply with the Rules Enabling Act and the Constitution."); *and Lampo Grp., LLC v. Paffrath*, No. 3:18-cv-01402, 2019 U.S. Dist. LEXIS 122523, at *6 (M.D. Tenn. July 23, 2019) ("The Court turns to the second question it must answer, i.e., whether Federal Rules of Civil Procedure 8, 12, and 56 violate the Rules Enabling Act and the Constitution. The Court has little difficulty determining that they do not."). As a result, the second prong of the test also supports preemption.

14

Accordingly, the Court finds that the KUPEPA is preempted by the Federal Rules, and Peach's motion for expedited relief pursuant to the KUPEPA is **DENIED**.[3] As a result, the parties' joint motion to set a status conference and hearing on whether the KUPEPA applies is **DENIED** as **MOOT**.

## IV.   CONCLUSION

For all these reasons, and the Court being otherwise sufficiently advised, **IT IS ORDERED** as follows:

(1) Peach's Motion to Strike [DE 39] and Motion to Dismiss [DE 37] are **DENIED**.

(2) Peach's Motion for Expedited Review Pursuant to Kentucky's Uniform Public Expression Protection Act [DE 41] is **DENIED**.

(3) The parties' Joint Motion for a Status Conference [DE 46] is **DENIED** as **MOOT**.

Rebecca Grady Jennings, District Judge
United States District Court

cc:   Counsel of record

April 22, 2024

---

[3] To the extent that Peach's motion may be construed as a regular motion for summary judgment, the Sixth Circuit has noted that "summary judgment should not ordinarily be granted before discovery has been completed . . . [t]his principle is particularly strong when constitutional and civil rights claims are at issue." *Tarleton v. Meharry Med. Coll*., 717 F.2d 1523, 1535 (6th Cir. 1983) (internal citations omitted); *see also Pres. Partners, Inc. v. Sawmill Park Properties, LLC*, No. 2:22-CV-477, 2023 WL 3212378, at *3 (S.D. Ohio May 2, 2023) (after observing that the court had recently granted an extension of the discovery deadlines, noting that "the Court is wary to put the proverbial cart before the horse and rule on [the] summary judgment motion. Indeed, the Sixth Circuit has admonished district courts that summary judgment should not ordinarily be granted before discovery has been completed."). Particularly when the parties have jointly moved to extend all discovery deadlines, the Court finds that ruling on a motion for summary judgment would be premature.